BOND, SCHOENECK & KING, PLLC
One Lincoln Center
Syracuse, New York 13202
Stephen A. Donato, Esq.
Sarah M. Harvey, Esq.
Telephone: (315) 218-8000
Fax: (315) 218-8100
Email:    sdonato@bsk.com
          sharvey@bsk.com

*Attorneys for Defendant Richard M. Cherry*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| COMMUNITY ENVIRONMENTAL CENTER INC., d/b/a BUILD IT GREEN! NYC, | Case No. 15-41173 (CEC) |
| Debtor. | |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF COMMUNITY ENVIRONMENTAL CENTER INC., d/b/a BUILD IT GREEN! NYC, | Adv. Proc. No. 17-01035 (CEC) |
| Plaintiff, | |
| v. | |
| RICHARD M. CHERRY, LAWRENCE GRAHAM, KAREN OUTLAW AND KENNETH DANIELS, | |
| Defendants. | |

**MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

THE COMPLAINT ............................................................................................................... 2

    I.    The Debtor.............................................................................................................. 2

    II.   The Committee........................................................................................................ 2

    III.  Defendant Richard M. Cherry........................................................................... 3

    IV.  Summary of Facts Alleged by the Committee ................................................ 3

    V.   The Claims for Relief............................................................................................ 4

ARGUMENT....................................................................................................................... 4

    I.    Legal Standard....................................................................................................... 4

    II.   The Complaint's First Claim for Relief Fails to State a Claim for Avoidance of Preferential Transfers Against Mr. Cherry........................................................ 6

        a.   The Alleged Transfers Were Not of an Interest of the Debtor in Property ............... 7

        b.   The Complaint Fails to Plausibly Assert that the Alleged Transfers were Made For the Benefit of Mr. Cherry .......................................................... 8

        c.   There Is No Factual Allegation to Plausibly Assert that the Debtor was Insolvent at the Time of the Alleged Transfers .......................................... 9

    III.  The Complaint's Second Claim for Relief Fails to State a Claim for Recovery of the Value of the Alleged Preferential Transfers Against Mr. Cherry ............................ 11

    IV.  The Complaint's Third Claim for Relief Fails to State a Claim for Breach of Fiduciary Duty Against Mr. Cherry ................................................................. 11

        a.   There Is No Factual Allegation of Conduct Amounting to Breach of a Fiduciary Duty on the Part of Mr. Cherry .............................................. 12

        b.   There Is No Factual Allegation to Plausibly Assert That Mr. Cherry's Alleged Breach of Duty Directly and Proximately Caused Any Damages Sought by the Committee ........................................................................ 13

    V.   The Complaint's Fifth Claim for Relief is Barred as Duplicative and Fails to State a Claim for Negligence Against Mr. Cherry ........................................ 14

VI.    The Complaint's Sixth Claim for Relief Fails to State a Claim for Disallowance
of Mr. Cherry's Claims ................................................................................................ 14

CONCLUSION.................................................................................................................... 15

## PRELIMINARY STATEMENT

Richard M. Cherry, by and through his undersigned counsel, submits this memorandum in support of his motion to dismiss the Complaint in this adversary proceeding as against him for failure to state a claim on which relief can be granted.  This motion is brought pursuant to Rules 8, 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, as made applicable to this proceeding by Rules 7008, 7009 and 7012 of the Federal Rules of Bankruptcy Procedure.

The Complaint is a perplexing document, asserting six claims against four defendants.  It appears to have been quickly assembled just days before the statute of limitations would have expired under 11 U.S.C. § 546, and, for the most part, contains little more than formulaic recitations of the elements of the claims that it asserts.

The Complaint's generic allegations fail to plausibly state any claim on which relief could be granted against Mr. Cherry.  For each of these reasons, as more fully discussed below, it is respectfully submitted that the Complaint should be dismissed as against Mr. Cherry in its entirety, with prejudice.[1]

---

[1] Mr. Cherry respectfully reserves his right to move to withdraw the reference should the Court find that the Committee has stated any claim upon which relief could be granted against Mr. Cherry.  In particular, the various state law claims the Committee purports to assert may not be finally adjudicated by the bankruptcy court under the authority of *Stern v. Marshall*, 564 U.S. 462, 131 S. Ct. 2594 (2011).

# THE COMPLAINT[2]

All matters discussed below are set forth in the Complaint or, where indicated, the public record on file with the Court.  The facts alleged in the Complaint are assumed to be true for purposes of this motion only.

## I.     The Debtor

Community Environmental Center, Inc. d/b/a Build It Green! NYC ("CEC") is the Debtor.  (Complaint, ¶ 1).  CEC is a New York not-for-profit corporation.  (Complaint, ¶ 1). According to the Complaint, CEC's principal place of business is in Long Island City, New York.  (Complaint, ¶ 1).  Build It Green! NYC was a division of CEC.  (Complaint, ¶ 26).  CEC was also the sole member of Solar One, a New York not-for-profit corporation.  (Complaint, ¶¶ 12 and 35).

CEC "was funded primarily by state and federal grants."  (Complaint, ¶ 24). These grants were "reduced substantially, which caused [CEC] to experience financial hardship." (Complaint, ¶ 25, 48-53).  Accordingly, the Complaint alleges that "[d]uring the period 2011 through the Petition Date, the Debtor was insolvent."  (Complaint, ¶ 22).  The Complaint provides very little facts in support of such conclusory allegation.

## II.    The Committee

This adversary proceeding has been brought by the Committee, purportedly pursuant to an Order granting the Committee leave, standing, and authority to prosecute causes of action on behalf of the Debtor.  (Complaint, ¶¶ 21-22).  That Order provides, in pertinent part, only that the Debtor "shall consent to the Committee's request of the Court, by motion or as

---

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Complaint.

provided for in a plan, to prosecute estate causes of actions on behalf of the Debtor's estate." (Complaint, ¶ 21).  A motion requesting such relief was not filed by the Committee until days after the Complaint was filed and after expiration of the time limits set forth in 11 U.S.C. § 546 (*See* Dkt. No. 257).

### III.     Defendant Richard M. Cherry

The Committee alleges that Mr. Cherry was a director and officer of the Debtor "at all times" mentioned in the Complaint.  (Complaint, ¶¶ 3 and 159).

### IV.     Summary of Facts Alleged by the Committee

The Complaint alleges that Mr. Cherry (and, in most cases, other defendants) generally mismanaged the Debtor.  Specifically, the Committee alleges that Mr. Cherry, among other things, failed to meet minimum financial standards (Complaint, ¶¶ 54-85), failed to oversee certain intercompany obligations with Solar One (Complaint, ¶¶ 86-117), failed to make sales tax payments (Complaint, ¶¶ 118-137), and exceeded his authority by incurring certain obligations with the Bank (Complaint, ¶¶ 138-143).  According to the Committee, these failures caused approximately $9 million in damages (roughly the amount of claims that have been filed against the Debtor's estate).  (Complaint, ¶¶ 34 and 177).  However, the Committee appears to have overlooked a critical point in its own Complaint: "the Debtor's funding was reduced substantially, which caused it to experience financial hardship that continued through the Petition Date." (Complaint, ¶ 25).  In fact, the Complaint alleges that the Debtor lost annual government funding in the approximate amount of $28,000,000.  (*See* Complaint, ¶ 49).

## V.        The Claims for Relief

The remaining paragraphs of the Complaint are spent setting forth six purported "claims for relief", which, for the most part, contain mere legal conclusions and boilerplate recitations of the elements of the various claims they purport to assert.  (Complaint, ¶¶ 144-194).

## ARGUMENT

### I.        Legal Standard

Federal Rule of Civil Procedure 8, which governs pleading requirements, is incorporated into Bankruptcy Rule 7008.  In relevant part, Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." (Emphasis added).  Federal Rule 12(b), which governs a motion to dismiss, is incorporated into Bankruptcy Rule 7012(b).  Rule 12(b)(6) provides that a complaint can be dismissed for "failure to state a claim upon which relief can be granted."

The Supreme Court opinions in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009) provide a framework for the factual allegations that a complaint must contain to survive a motion to dismiss under Rule 12(b)(6).   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974).   Although "detailed factual allegations" are not necessary, a plausible complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965.  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.  "Threadbare recitals of the elements of

a cause of action, supported by mere conclusory statements, do not suffice." *Id*. "A court should dismiss a complaint that merely contains 'naked assertion[s]' devoid of 'further factual enhancement.'" *In re Trinsum Group, Inc.*, 460 B.R. 379, 387 (S.D.N.Y. 2011) (quoting *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966)).

To state a claim for relief that is plausible on its face, a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. The complaint must contain "enough factual matter (taken as true)" to "raise [the] right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56, 127 S. Ct. at 1965. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitle[ment] to relief'.'" *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966 (quoting *DM Research, Inc. v. College of Am. Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999)).

"The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) [unlawful behavior] reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief." *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

"The foregoing construction of Federal Rule of Civil Procedure 8 is intended as a policy matter to weed out meritless cases prior to the commencement of discovery, thereby minimizing the expenditure of the judicial system's resources on such cases." *Official Comm. of*

*Unsecured Creditors of Hydrogen, LLC v. Blomen (In re Hydrogen, L.L.C.)*, 431 B.R. 337, 346

(Bankr. S.D.N.Y. 2010) (citing *Twombly*, 550 U.S. at 559-60, 127 S. Ct. at 1967-68).

"[S]omething beyond the mere possibility of loss causation must be alleged, lest a plaintiff with a

largely groundless claim be allowed to take up the time of a number of other people, with the

right to do so representing an *in terrorem* increment of the settlement value." *Twombly*, 550 U.S.

at 557-58, 127 S. Ct. at 1966 (internal quotation marks omitted).


**II.    The Complaint's First Claim for Relief Fails to State a Claim for Avoidance of Preferential Transfers Against Mr. Cherry**

While criticizing Mr. Cherry for not ensuring that the Debtor made sales tax

payments, the Committee has also decided to scrutinize the sales tax payments that were made as

preference payments under 11 U.S.C. § 547, which states, in pertinent part, that:

> (b)  Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made—
>> (A)  on or within 90 days before the date of the filing of the petition; or
>> (B)  between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if—
>> (A)  the case were a case under chapter 7 of this title [11 USCS §§ 701 et seq.];
>> (B)  the transfer had not been made; and
>> (C)  such creditor received payment of such debt to the extent provided by the provisions of this title [11 USCS §§ 101 et seq.].

11 U.S.C. § 547(b).  A plaintiff is required to allege "for purposes of pleading sufficiency . . .

enough facts with respect to each of the foregoing elements of section 547(b) in order to put

Defendants on notice" of a preference claim. *Official Comm. of Unsecured Creditors Hydrogen, L.L.C. v. Blomen (In re Hydrogen, L.L.C.)*, 431 B.R. 337, 355 (Bankr. S.D.N.Y. 2010). Here, the Committee has failed to properly allege that (1) the challenged transfers were "of an interest of the debtor in property", (2) the challenged transfers were "for the benefit of" Mr. Cherry, and (3) the debtor was insolvent at the time of the transfers. 11 U.S.C. § 547(b).

### a.    The Alleged Transfers Were Not of an Interest of the Debtor in Property

In order for a transfer to be deemed a preference, it must be of "an interest of the debtor in property." 11 U.S.C. § 547(b). Section 1132 of the New York State Tax Law provides, in pertinent part, that:

> Every person required to collect the tax shall collect the tax from the customer when collecting the price, amusement charge or rent to which it applies. If the customer is given any sales slip, invoice, receipt or other statement or memorandum of the price, amusement charge or rent paid or payable, the tax shall be stated, charged and shown separately on the first of such documents given to him. *The tax shall be paid to the person required to collect it as trustee for and on account of the state*.

N.Y. Tax Law § 1132(a)(1) (emphasis supplied). New York State sales tax is a trust fund tax whereby the funds collected are held in trust for the state. *See De Chiaro v. N.Y. State Tax Com.*, 760 F.2d 432 (2d Cir. 1985) (holding that New York State sales tax is a trust fund tax and not subject to discharge); *Canale v. N.Y. State Dep't of Taxation & Fin.*, 84 Misc. 2d 786, 786, 378 N.Y.S.2d 566, 567 (Ct. Cl. 1975) (stating that "[s]ales taxes are collected by a vendor or retailer as a trustee, N.Y. Tax Law §1132(a), and as such, the moneys so collected do not become the vendor's property, but rather belong to the state as the legal beneficiary of the trust").

Where, as here, a debtor holds property in trust under applicable nonbankruptcy law, the interest in that property belongs to the trust beneficiary and not to the debtor. In addition, such funds are not property of the estate under 11 U.S.C. § 541(a). *See Begier v. IRS*,

496 U.S. 53, 59, 110 S. Ct. 2258, 2263 (1990) (stating that "because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.' Nor is such an equitable interest 'property of the debtor' for purposes of § 547(b)").

In *Begier v. IRS*, the United States Supreme Court held that funds voluntarily paid to the Internal Revenue Service ("IRS") for federal withholding, Federal Insurance Contributions Act and excise taxes out of a general operating account were not property of the debtor's estate because they were held in trust for the IRS, and that the trustee, therefore, could not recover the funds paid to the IRS during the preference period. *Begier v. IRS*, 496 U.S. 53, 66-7, 110 S. Ct. 2258, 2267 (1990). The Supreme Court concluded that the *voluntary payment* of trust fund taxes, regardless of the source of the funds (e.g., general account versus a separate trust account), provided the necessary "nexus between the "amount" held in trust and the funds paid." *Id*.

Similar to *Begier*, CEC is alleged to have made payments from a "Build it Green account" to New York State. (Complaint, ¶¶ 130-134). Because the alleged transfers were made voluntarily with trust-fund taxes, they are not "property of the Debtor's estate" and cannot be avoided pursuant to 11 U.S.C. § 547(b). *Begier v. IRS*, 496 U.S. 53, 67, 110 S. Ct. 2258, 2267 (1990) ("[A]ny voluntary prepetition payment of trust-fund taxes out of the debtor's assets is not a transfer of the debtor's property."). As such, the Complaint has not plausibly alleged that the challenged transfers were of an interest of the Debtor in property, and the first claim for relief must be dismissed.

> **b.    The Complaint Fails to Plausibly Assert that the Alleged Transfers were Made For the Benefit of Mr. Cherry**

Under 11 U.S.C. § 547(b)(1), a transfer must be "to or for the benefit of a creditor." The Committee asserts that, "the Debtor made, or caused to be made, the Sales Tax Payments to New York State for the benefit of the Defendants." (Complaint, ¶ 146). The benefit

purportedly is a reduction in Mr. Cherry's "personal exposure of sales tax obligations to New York State." (Complaint, ¶ 150).

However, the Committee provides only conclusory support for this principle allegation by claiming that the "Initial Sales Tax Payment was made, among other reasons, to limit the personal liability of Cherry. . ." (Complaint, ¶ 132). As for the Re-Issued Sales Tax Payments, the Committee makes no allegation of personal liability beyond a general conclusion that "the Defendants, as responsible persons, were liable to New York State" for sales taxes.[3] (Complaint, ¶ 133 and 147).

As is the case here, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. Moreover, Movant has found no authority supporting the Committee's theory that a payment made by a debtor to the State of New York for sales taxes constitutes a transfer "to or for the benefit of" directors and officers of a debtor corporation. Accordingly, it is respectfully submitted that the first claim for relief should be dismissed, as the Complaint has not plausibly alleged that the challenged transfers were to or for the benefit of Mr. Cherry.

**c.  There Is No Factual Allegation to Plausibly Assert that the Debtor was Insolvent at the Time of the Alleged Transfers**

There is no presumption of insolvency within the 90 day to one year period before the filing of a bankruptcy petition. *See, e.g., Matson v. Strickland (In re Strickland)*, 230 B.R. 276, 281 (Bankr. E.D. Va. 1999). Accordingly, the Committee "must provide facts of the debtor's insolvency beyond the 90-day presumption. Conclusory statements that the transfers were made while the debtor was insolvent fail to satisfy the requirements under Iqbal." *Beaman v. Barth (In re AmerLink, Ltd.)*, 2011 Bankr. LEXIS 925, at *11-12 (Bankr. E.D.N.C. Mar. 11,

---

[3] There has been no determination of this allegation.

2011) (*citing Angell v. BER Care, Inc. (In re Caremerica, Inc.)*, 409 B.R. 737, 752 (Bankr. E.D.N.C. 2009)).

Further, "[a]n adequate pleading of insolvency 'requires some sort of 'balance sheet' . . . information . . . that the Court can use to infer that the corporation's liabilities exceeded their assets at the time the transfers took place.'" *Innovative Custom Brands, Inc. v. Minor*, 2016 U.S. Dist. LEXIS 8354, at *7-8 (S.D.N.Y. Jan. 25, 2016) (emphasis in original) (quoting *In re Trinsum*, 460 B.R. at 392). A complaint which includes little more than "net income figures and net cash flow figures for each year" is insufficient to plead that a debtor corporation was insolvent at the time of any given transfer. *In re Trinsum*, 460 B.R. at 392.

Here, the Complaint asserts that "[t]he Sales Tax Payments were made while the Debtor was insolvent." (Complaint, ¶ 149). But the only "facts" alleged in support of that sweeping assertion are contained in cursory paragraphs of the Complaint. For example, the Complaint baldy alleges that "[d]uring the period 2011 through the Petition Date, the Debtor was insolvent", but only provides asset and liability figures for one date within the one year period prior to the Petition Date.[4] (Complaint, ¶¶ 30 and 42). There is no specific allegation or facts alleged to support that the Debtor's liabilities exceeded its assets at the time that each particular transfer at issue in this proceeding was made.

Where, as here, a complaint "fails to adequately plead that the Company's liabilities exceeded its assets at the time of the transfers," it "fails to adequately plead insolvency." *Innovative Custom Brands*, 2016 U.S. Dist. LEXIS 8354, at *8 (emphasis added). Further, the Complaint does not even allege whether the amounts given for the Debtor's assets

---

[4] Specifically, the Committee alleges that "As of December 8, 2014, the Debtor's books and records reflected total assets of approximately $815,000 and total liabilities of approximately $5.3 million." (Complaint, ¶ 30).

represent the fair saleable value of those assets, or just their book value. "It is the fair saleable value of assets, not their book value, that determines insolvency." *Morgan Guaranty Trust Co. v. Hellenic Lines Ltd.*, 621 F. Supp. 198, 220 (S.D.N.Y. 1985) (citations omitted).

For these reasons, the Complaint has not plausibly alleged that the Debtor was insolvent at the time of any challenged transfer, and the first claim for relief must be dismissed.

### III.    The Complaint's Second Claim for Relief Fails to State a Claim for Recovery of the Value of the Alleged Preferential Transfers Against Mr. Cherry

The Committee's second claim for relief, which asserts the right to recover any avoidable transfers from Mr. Cherry pursuant to 11 U.S.C. § 550, should be dismissed. The second claim for relief requires as a predicate that the Plaintiff prevail on its first claim for relief in order to render the alleged transfers avoidable. *See* 11 U.S.C. § 550(a). However, as demonstrated above, the Committee has failed to adequately plead a claim for which relief may be granted under the first claim for relief. Accordingly, because there is no basis to avoid any of the alleged "sales tax" transfers, the Committee's second claim for relief for the recovery of the value of the alleged preferential transfers fails and must be dismissed.

### IV.    The Complaint's Third Claim for Relief Fails to State a Claim for Breach of Fiduciary Duty Against Mr. Cherry

The Third Claim for Relief in the Complaint purports to assert claims for breach of fiduciary duties. (Complaint, ¶¶ 158-178). However, the Complaint fails to state a plausible claim for fiduciary breach against Mr. Cherry.

To survive a motion to dismiss, a complaint "must provide adequate facts to support each of the . . . elements of the claim." *In re Hydrogen, LLC*, 431 B.R. at 352. The elements of a claim for breach of fiduciary duty are threefold: (1) a fiduciary duty existed between the parties, (2) the defendant breached that duty, and (3) the plaintiff was damaged as a

result of the breach. *See*, *e.g.*, *Gate Technologies v. Delphix Capital Markets*, 2013 U.S. Dist. LEXIS 95368, at *21 (S.D.N.Y. July 9, 2013) (internal citations omitted). Each of these elements must be sufficiently pled to state a claim for breach of fiduciary duty under New York law. *Id.*[5] As discussed below, the Complaint fails to satisfactorily plead the second and third elements, and thus fails to state a claim for fiduciary breach against Mr. Cherry.

### a. There Is No Factual Allegation of Conduct Amounting to Breach of a Fiduciary Duty on the Part of Mr. Cherry

The Committee has not alleged the second element of a claim for breach of fiduciary duty with the necessary factual support. *See*, *In re Hydrogen*, 431 B.R. at 348 ("Vague and general allegations that certain unspecified transactions had been entered into and that certain unnamed obligations had been incurred by the Debtor cannot form the factual basis for an alleged failure on the part of Defendants to observe their fiduciary duty, as the "circumstances, occurrences, and events" required to be alleged under Federal Rule of Civil Procedure 8(a) are entirely absent in the Amended Complaint.").

To state a claim for relief that is plausible on its face, a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. Here, the Complaint contains extensive assumptions and leaps in logic. There is no significant factual content alleged in the Complaint to show that Mr. Cherry actually mismanaged the Debtor in breach of his fiduciary duty. As Judge Gonzalez concluded in *In re Hydrogen*, "[i]n light of the general absence of supporting facts set forth in the Amended Complaint, the Court finds the breach-of-

---

[5] Pursuant to the "internal affairs doctrine", it is assumed for purposes of this Motion that New York law governs the Committee's claim for breach of fiduciary duty to the extent those claims are premised on the allegation that Mr. Cherry was a director and officer of the Debtor, a New York not-for-profit corporation. *See*, *e.g.*, *In re Hydrogen*, 431 B.R. at 346.

fiduciary-duty claim to be 'speculative' under *Twombly*." *In re Hydrogen*, 431 B.R. at 348. The same conclusion should be reached here.

> **b.      There Is No Factual Allegation to Plausibly Assert That Mr. Cherry's Alleged Breach of Duty Directly and Proximately Caused Any Damages Sought by the Committee**

The third element of any claim for breach of fiduciary duty is that the plaintiff was damaged as a result of the breach. *Gate Technologies*, 2013 U.S. Dist. LEXIS 95368, at *21. This requires a showing of direct and proximate causation. *See, e.g.*, *Fannie Mae v. Olympia*, 2013 U.S. Dist. LEXIS 12901, at *39. In other words, a plaintiff must show "that [defendant's] actions or lack of action factually and proximately caused [plaintiff's] damages." *Id*. It is especially important to examine the sufficiency of the Complaint in this regard where, as here, the Committee's alleged damages may solely be the product of the decline of millions of dollars in stimulus grant funds. (*See* Complaint, ¶¶ 48-53).

"[S]omething beyond the mere possibility of loss causation must be alleged, lest a plaintiff with a largely groundless claim be allowed to take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *Twombly*, 550 U.S. at 557-58, 127 S. Ct. at 1966 (internal quotation marks omitted).

Here, the Complaint offers only bald and conclusory allegations that the Debtor's estate has been damaged by any act or omission of Mr. Cherry. (*See* Complaint, ¶ 177). Such boilerplate allegations are insufficient to plead causation, or any other element of a claim.

**V.      The Complaint's Fifth Claim for Relief is Barred as Duplicative and Fails to State a Claim for Negligence Against Mr. Cherry[6]**

The Committee's tort claim for negligence is based on the same factual allegations as the breach of fiduciary duty claim and merely states "the Defendants were negligent in the exercise of their functions and duties as directors and/or officers of the Debtor." (Complaint, ¶ 188).  Such "threadbare recitals" are inadequate.  *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.

In addition, mere negligence does not impact the protections afforded to directors and officers against personal liability under the corporate form.  Accordingly, the fifth claim for relief is duplicative, fails to state a claim for which relief may be granted, and should be dismissed.

**VI.     The Complaint's Sixth Claim for Relief Fails to State a Claim for Disallowance of Mr. Cherry's Claims**

The Committee's sixth claim for relief, which asserts disallowance of Mr. Cherry's claims pursuant to 11 U.S.C. § 502(d) should be dismissed.  The sixth claim for relief requires as a predicate that the Plaintiff prevail on its first claim for relief in order to render the alleged transfers avoidable.  *See* 11 U.S.C. § 502(d); *see also Gowan v. Wachovia Bank, N.A. (In re Dreier LLP)*, 453 B.R. 499, 517 (Bankr. S.D.N.Y. 2011) (stating that a plaintiff "must plead a legally sufficient avoidance claim to plead a legally sufficient disallowance claim under § 502(d)").  However, as demonstrated above, the Committee has failed to adequately plead a claim for which relief may be granted under the first claim for relief.  Accordingly, because there

---

[6] The Fourth Claim for Relief of the Complaint is not stated against Mr. Cherry.  (*See* Complaint, ¶¶ 179-186).  Thus, it is not addressed here.

is no basis to avoid any of the alleged transfers, the Committee's sixth claim for relief for the disallowance of Mr. Cherry's claims fails and must be dismissed.

## CONCLUSION

For the reasons set forth above, the Complaint should be dismissed in its entirety, with prejudice, as against Richard M. Cherry.

Dated:  May 17, 2017                    BOND, SCHOENECK & KING, PLLC


By:    /s/  Stephen A. Donato
          Stephen A. Donato
          Sarah M. Harvey
One Lincoln Center
Syracuse, NY 13202
Telephone:  (315) 218-8000
Fax:  (315) 218-8100
Email:  sdonato@bsk.com
Email:  sharvey@bsk.com

*Attorneys for Richard M. Cherry*